CHARLES O. WHITMORE & another *vs.* THE SOUTH BOSTON IRON COMPANY.

In an action to recover damages for the breach of an implied warranty of reasonable fitness, the following contract was proved: The defendants wrote to H., who was then a partner of the plaintiffs, on March 29th, saying — "We propose to make you eighteen or twenty two retorts in dry sand, with two heads each, like the one furnished you in February last, weighing about 3000 lbs. each, for $100 each;" H. replied — "You will please make for me eighteen retorts, as per memorandum and terms in yours of March 29, and directions given by myself and G." *Held*, that the contract contained no implied warranty that the retorts should be fit for any special purpose, and that no such warranty could be added to it by parol; that the words, "like the one furnished you in February last," should be construed to apply to the quality of workmanship, as well as to the size, shape and exterior form; and that, under the clause referring to directions by H. & G., a compliance with the requirements of the contract as to the mode of casting and quality might be waived by them, and, if so waived, the plaintiffs would be bound thereby, and, in the absence of fraud or bad faith on the part of the defendants, the amount of the knowledge of H. & G. as to the best methods of casting was immaterial.

A written contract for the manufacture of retorts cannot be affected by proof of a custom that, in the absence of an express agreement, founders shall not be held to warrant their castings against latent defects; and that, in case of apparent defects, they shall be entitled to have castings returned to them within a reasonable time, and to replace them with new ones.

The rule of damages in an action for a breach of warranty in articles which are manufactured under an agreement, but which are not furnished for any particular use, is the difference in value between the articles actually furnished and such as should have been furnished.

CONTRACT. The declaration alleged that the plaintiffs were formerly partners with William T. Hawes, now deceased, and engaged with him in the manufacture of coal oil at East Boston; that, in the early part of 1858, the plaintiffs and Hawes employed the defendants to manufacture for them eighteen iron retorts, to be used at their works in East Boston, for the purpose of extracting oil from coal, for the price of $100 each, and the retorts were manufactured, and the price was paid; that subsequently the retorts were set, and, when applied to use, proved defective and imperfect in their construction, and began to crack and leak, causing not only the loss of the retorts themselves, but a loss of oil, labor and fuel, an interruption of business, and the expense of removing the retorts and replacing them with others.

At the trial in the superior court, before *Putnam,* J., the plain-tiffs introduced evidence tending to prove their partnership with Hawes; and, to prove the contract, introduced a letter, signed by the defendants, as follows: " South Boston Foundery, March 29, 1858.   Mr. W. T. Hawes — Dear Sir: We propose to make you eighteen or twenty two retorts in dry sand, with two heads each, like the one furnished you in February last, weighing about 3000 lbs. each, for $100 each."   The reply of Hawes was as fol-lows: " You will please make for me eighteen retorts, as per memorandum and terms in yours of March 29, and directions given by myself and Henry Gessner."   They also introduced much evidence to show that a majority of the retorts, when used, cracked and leaked, and that some had blow-holes and shrink-holes and cold-shuts, and that, when broken, they were found to be of unequal thickness, and were otherwise imperfect; and that they were cast horizontally, and in green sand, which is an unusual and improper mode of casting retorts, and more likely to produce the defects enumerated.

No evidence was introduced to show that the retorts were not like the one referred to in the defendants' letter, or that the iron itself which was used was bad, or that the defendants did not follow the directions of Hawes & Gessner, or that they failed to comply with any of the express provisions of the contract; and there was no direct evidence that they were informed or knew for what special purpose the retorts were to be used.

The defendants introduced evidence tending to show that they did not know the special purpose for which the retorts were designed; that making coal oil was a new business, experimental with the plaintiffs, and unknown to the defendants; that they had never made retorts for that purpose, though they had made gas retorts of similar construction and shape, and which had to be subjected to a greater heat, and knew that the retorts in ques-tion were to be exposed to a high degree of heat, and were required to be tight; that, when applied to by Hawes & Gess-ner, they told them, and it was mutually understood that, if they made the retorts, they should have to cast them horizontally, as they could not get the necessary fixtures to cast them vertically,

5 *

in season; that, after they had cast a number horizontally in dry sand, Hawes & Gessner desired them faster, and were told by the defendants that they could not cast them faster unless it was done in green sand, and, if so cast, they would be more likely to contain defects, like those mentioned; that, thereupon, they were directed to cast them in green sand, and seven were so cast, horizontally, it being impossible to cast them vertically in green sand; that Hawes & Gessner were present while some of them were so cast, and made no objection; and that Gessner was an engineer, acquainted with the use of retorts for manufacturing coal oil. It did not appear, however, that either he or Hawes was particularly acquainted with the different modes of casting.

There was no claim that the defendants were guilty of fraud, or acted in bad faith.

The defendants offered to prove that there was, at the time of making this contract, a general, uniform and universal custom in Boston and its vicinity, that founders should not be held to warrant their castings against latent defects, in the absence of an express agreement; and that, in case of apparent defects, and in the absence of an express agreement, founders were entitled to have the castings returned within a reasonable time, and to replace them with new ones; but the judge excluded the evidence. The defects complained of in this case were mostly latent.

The plaintiffs founded their claim for damages, and relied solely upon an implied warranty that the retorts were reasonably fit and proper for the purpose mentioned in the declaration. The defendants contended that the contract, being in writing was for the court to construe; that it contained no such warranty as was claimed; that no warranty could be added to it by parol, or by implication of law, as no purpose was mentioned for which the retorts were designed; and that there was a variance between the declaration and proof. The defendants also asked the court to rule, amongst other things, that if there were unreasonable defects in the retorts, which arose from the fact that they were cast horizontally and in green sand, and this

was so done by the request or with the consent of the plaintiffs, or their authorized agent, or in pursuance of an original agreement or understanding to that effect, the price being made and fixed accordingly, the plaintiffs must take the risk of such defects ; and that, if the plaintiffs can recover at all, it is only the difference between the value of the retorts as delivered, and what they would have been worth, if not defective.

The judge declined so to rule; and instructed the jury, amongst other rulings not material here, that, in all cases where a person orders of a manufacturer an article to be made for a special purpose, and relies upon the judgment of the manufacturer alone, there is an implied warranty that the article shall be reasonably fit for the purpose for which it is to be used ; and, if they found the present case to come within this principle, it was the same as if the parties had put the implied warranty in writing, and had expressly warranted to furnish such retorts as should be fit for the purpose for which they were ordered ; that it was not necessary for the defendants to know the entire object for which they were to be used, but only so much as was material for their purposes, and not the whole art of making coal oil ; that it was for the jury to say whether the defendants did not know enough, upon the evidence, to require them to make retorts fit and proper for that use and purpose ; that it was not necessary for the plaintiffs to inform the defendants of the purpose for which the retorts were to be used, but it would be sufficient if the defendants knew it ; that the words in the letter of the defendants, " like the one furnished you in February last," did not apply to quality, but only to shape, exterior form, &c., and that the words in the reply of Hawes, " directions given by myself and Henry Gessner," referred to matters of general superintendence, and not to quality ; that, in relation to those directions of Hawes & Gessner, as stated in the contract, the jury would say whether anything more was intended than an oversight from them as to the form of the article, the thickness of the iron, and matters of that kind; that, in regard to the mode of casting, whether vertically or horizontally, the jury would say whether, if the parties were satisfied that it was better that the retorts should be cast vertically

than horizontally, the defendants were authorized by Hawes & Gessner to cast them horizontally, the latter knowing at the time when they authorized this mode of casting that it was not so good as the other; that, if Hawes & Gessner gave such directions, knowing this fact, the plaintiffs could not claim damages for defects arising from this source; and that they must take into consideration, not only whether these gentlemen authorized this mode of casting, but whether they knew at the time that it was not so good as the other mode; that, in regard to damages, if entitled to recover at all, the plaintiffs were entitled to recover the difference between what the defective retorts were worth, and what such retorts as the defendants were bound to give them would have been worth; and also damages for the delay arising in the operation, and the extra cost of coal, and of having their men idle during this time, the additional cost of labor, and anything of that kind.

The jury returned a verdict for the plaintiffs, and the defendants alleged exceptions.

*A. A. Ranney,* for the defendants. 1. The writing contained no such warranty as was claimed, and none can be added. *Chanter* v. *Hopkins,* 4 M. & W. 399. *Davis* v. *Ball,* 6 Cush. 505. *Dutton* v. *Gerrish,* 9 Cush. 89. *Lamb* v. *Crafts,* 12 Met. 353. *Van Ostrand* v. *Reed,* 1 Wend. 424. *Randall* v. *Rhodes,* 1 Curtis C. C. 90. *Galpin* v. *Atwater,* Conn. .(not yet reported.) 2. No purpose being named, the law implies an obligation only to do the work specified with reasonable and customary skill. 3. The court erred in construing the clause in the contract referring to the retort previously furnished, and also in construing that referring to the directions of Hawes & Gessner. *Chapman* v. *Lowell,* 4 Cush. 378. 4. And the instruction that the plaintiffs were not bound by a subsequent agreement, authorizing the retorts to be cast horizontally, and in green sand, unless they knew that this method was not so good as the other, was clearly erroneous. 5. The evidence offered to prove certain customs was admissible. *Sumner* v. *Tyson,* 20 N. H. 384. *Clark* v. *Baker,* 11 Met. 186. *Atkins* v. *Howe,* 18 Pick. 16. 6. The ruling in regard to damages was general, uncertain and indefinite,

and allowed the jury in their discretion to assess damages, however remote, uncertain or conjectural.

*J. G. Abbott & G. H. Preston,* for the plaintiffs. 1. There was no such written contract in this case as to exclude evidence of an implied contract. The written contract had reference to the size, shape and exterior form of the retorts, and not to the quality of their workmanship. 2. The principle of implied warranty was correctly stated. 2 Story on Con. §§ 836, 836 *a,* and cases cited. Chit. Con. (8th Amer. ed.) 450, 451. This was a case of the manufacture of an article for a specific purpose. Knowledge by the defendants that the retorts were to be used to extract oil from coal was unnecessary; it was enough if they knew that they were to be exposed to the fire, and that they should be perfectly tight, which the jury have found that they did· know. 3. The defendants are presumed, from their business, to have known the best and proper mode of casting retorts, and there is no presumption or proof of any such knowledge in the plaintiffs, Hawes or Gessner; if, therefore, the alleged agreement was made, the parties did not stand on equal terms, and Hawes & Gessner were misled, and had a right to rely upon the superior knowledge of the defendants. 4. The evidence offered as to customs was properly excluded. 1 Greenl. Ev. § 292. *Stevens* v. *Reeves,* 9 Pick. 197. *Clark* v. *Baker,* 11 Met. 186. *Berkshire Woollen Co.* v. *Proctor,* 7 Cush. 417. *Fisher* v. *Sargent,* 10 Cush. 250. *Bowen* v *Stoddard,* 10 Met. 375. *Metcalf* v. *Weld,* 14 Gray, 210. 5. The items of damage stated by the judge are all losses directly resulting as a consequence of the breach of warranty. 2 Story on Con. §§ 849 *a,* 1022 *b.* Sedgwick on Damages, (2d ed.) 71. *Bridge* v. *Wain,* 1 Stark. R. 504. *Lewis* v. *Peake,* 7 Taunt. 153. *Armstrong* v. *Percy,* 5 Wend. 535. *Masterton* v. *Mayor &c. of Brooklyn,* 7 Hill, (N. Y.) 73. *Blanchard* v. *Ely,* 21 Wend. 342 *Driggs* v. *Dwight,* 17 Wend. 71. *Miller* v. *Mariners' Church* 7 Greenl. 51. *Freeman* v. *Clute,* 3 Barb. 424. *Davis* v. *Talcott,* 14 Barb. 611. *Horner* v. *Wood,* 16 Barb. 386. *Batchelder* v *Sturgis,* 3 Cush. 205. *Fox* v. *Harding,* 7 Cush. 516.

CHAPMAN, J. The court are of opinion that the rulings at the trial were erroneous in several important particulars

1. The contract between the parties was made in writing, and is contained in the letter of the defendants to Hawes, and his reply. As soon as the defendants assented to the modifications stated in the reply, the contract was complete. In construing the contract, the judge ruled that the words, " like the one furnished you in February," did not apply to quality, but only to shape, exterior form, &c. But the court are of opinion that this is too restricted a construction of these words. They do not apply to weight, because the weight is expressly designated; but they apply to the material; and this should not only be iron, but the same kind of iron that was used in the sample referred to ; and they also apply to the quality of the workmanship, which should be like that referred to. The language implies that the iron shall be merchantable of its kind. *Gardiner* v. *Gray*, 4 Camp. 144. *Shepherd* v. *Pybus*, 3 Man. & Gr. 868. Chit. Con. (8th Amer. ed.) 450. But it does not imply that the retorts shall be fit for the particular use alleged in the declaration. It is only when a party undertakes to supply an article for a particular use, that he is held to warrant that it shall be fit and proper for that purpose. Chit. Con. 450, and cases there cited. *Brown* v. *Edgington*, 2 Man. & Gr. 279. *Dutton* v. *Gerrish*, 9 Cush. 89. When the contract is in writing, an additional warranty, not expressed or implied by its terms, that the article is fit for a particular use, cannot be added either by implication of law or by parol proof. *Chanter* v. *Hopkins*, 4 M. & W. 399. The general doctrine that parol evidence is inadmissible to vary or add to a written contract would exclude the parol proof; and the ordinary doctrine of construing contracts by adopting the fair import of the language which the parties have used would exclude such warranty by implication of law. Some of the cases cited are also authorities on this point. The question whether there was such warranty should not have been submitted to the jury ; but they should have been instructed that the contract of the parties did not contain such warranty.

2. The instructions given to the jury as to the directions given by Messrs. Hawes & Gessner were incorrect. The reply of Hawes to the defendants' proposal directed the making of the

retorts " as per memorandum and terms in yours of March 29, and directions given by myself and Henry Gessner." Such reasonable directions as he and Gessner might choose to give would come within this clause, and be binding on the plaintiffs. The plaintiffs allege, as one of their grounds of complaint, that the retorts were cast horizontally, and in green sand. They offered evidence tending to show that the retorts were thus cast that this method of casting is unusual and improper; that a horizontal casting is much more liable to cold-shuts, blow-holes, shrink-holes and other defects; and that, in a green sand casting, the liability to blow-holes and shrink-holes is much greater than in a dry sand casting. In reply to this, the defendants offered evidence tending to show that, when applied to by Hawes and Gessner, they told them, and that it was understood mutually, that, if they made them, they should have to cast them horizontally, as they could not get the necessary fixtures to cast them vertically in season; that they began to cast them, and had cast a number horizontally in dry sand, when Hawes & Gessner desired them faster, and were told by the defendants that they could not get them out faster, unless they cast them in green sand, and if so cast they would be more likely to contain blow-holes, shrink-holes, &c., and thereupon they ordered the defendants to cast them in green sand, as they must have them; that seven were accordingly cast in green sand, and horizontally, it being impossible to cast them vertically in green sand; that all those cast were cast horizontally, and some of them in presence of Hawes & Gessner, one or both of them, without objection; that they furnished a plan specifying the dimensions and shape and thickness of the retorts, which was followed by the defendants, as they claimed, and that the said Gessner examined the retorts.

If casting the retorts horizontally was an unusual and improper method, such casting would not be a compliance with the contract; and no conversation which was had prior to the making of the contract would be admissible to vary the writing. The casting in green sand was also in violation of the written contract, which provides that the casting shall be in dry sand.

But Hawes & Gessner might waive a compliance with their obligation to cast the retorts according to the requirement of the contract; and if, because they were in haste to get the work completed, or for any other reason satisfactory to them, they did waive their rights in this respect, and consent that the retorts should be cast horizontally, and in green sand, the plaintiffs are bound by such waiver and consent. The amount of their knowledge as to the quality of iron, and as to how much better vertical casting is than horizontal casting, or dry sand casting than green sand casting, is immaterial; and the instructions on this subject were erroneous. The only question which was material is, whether they or either of them did in fact direct or give consent to the use of the green sand, and the method of casting horizontally, as adopted by the defendants.

3. The evidence offered to show that there was in Boston and its vicinity a custom that founders should not be held, in the absence of an express agreement, to warrant their castings against any latent defects; also that there was a custom that they should, in case of apparent defects, and in the absence of any express agreement, be entitled to have the castings returned in a reasonable time, and a right to replace them with new ones, was properly rejected. It would be difficult to state a principle which would reconcile all the numerous decisions that have been made on the subject of local customs or usages. Story, J., in *The Schooner Reeside*, 2 Sumn. 569, says: " I rejoice to find that, of late years, the courts of law, both in England and in America, have been disposed to narrow the limits of the operation of such usages and customs, and to discontinue any further extension of them." In the present case, the usage cannot be considered as forming a part of the contract.

If the claim of the plaintiffs is founded merely in an implied warranty that the retorts should be fit for the particular use alleged, the court are of opinion that the action cannot be maintained. If it is to be further prosecuted on the ground that the contract, as interpreted by the court, has been broken, then the rule of damages, if the action is maintained, will be the difference in value between the retorts actually furnished, and such

retorts as should have been furnished. This is the rule when goods are not furnished for any particular use. *Bartlett* **v.** *Blanchard*, 13 Gray, 429. *Exceptions sustained.*